Brenda Sue CARTER, Appellant,

v.

Clem Dickerson CARTER, Jr., Appellee.

Court of Appeals of Kentucky.

Sept. 9, 1983.

Louis M. Waller, Russellville, for appellant.

Fred Greene, Russellville, for appellee.

Before McDONALD, REYNOLDS and WILHOIT, JJ.

McDONALD, Judge:

This is an appeal from a denial of maintenance and a denial of a share of marital property in a marriage dissolution proceeding.

On June 4, 1980, the parties to this appeal entered into an antenuptial agreement whereby each waived all his or her interest in the property of the other. The parties were married two days after the agreement was signed.

We will first address the issue of the antenuptial agreement, inasmuch as the trial court has determined that said agreement controls the issues concerning property rights between the parties. We hold that under the facts of this case, this finding is clearly erroneous. CR 52.01.

The fact of the execution by the parties of the antenuptial agreement is undisputed. Also undisputed is the fact that appellee

destroyed the original document in the presence of the appellant. Nevertheless, appellee now insists that it was not his intention thereby to revoke the agreement. His pertinent testimony on this issue is as follows:

Q. Now, you heard your wife testify that you tore up one of these in her presence, do you, did you do that, or did you, did you do that, you're under oath?

A. Yes, I tore one up, she said I don't want anything you got whatsoever when I leave you, I don't care if the paper is there or not. Her verbal statement, whatever.

Q. Did you tear it up with the intent of revoking it at the time you did it?

A. No.

Q. Did you intend—

A. (Interrupting) Well, as far as I, just, she just said tear it up and I just tore it up, okay. If she's making a big deal out of it, that was part of the reason she couldn't love me or live with me was because of that agreement.

Q. Are you saying then that this agreement is still in effect after you tore it up in her presence and now you are trying to use the copy in Fred Greene's office? Are you saying that's still in effect?

A. Yes, what happened to the verbal agreement, what happened to the verbal agreement that she had, that we had ever since, prior to our marriage, and she said right before she walked out the door this last time, she said I don't want nothing you've got. And now it comes up she wants eleven thousand dollars. I don't know where she got this.

A factual situation similar to the one herein arose in Missouri, *In Re Estate of Reed*, 414 S.W.2d 283 (Mo.1967). After two months of marriage, Mr. Reed, deciding their previously executed antenuptial agreement did not adequately provide for his wife, told her, "Hold the stove door open," whereupon he threw the contract into the stove, destroying it. After Mr. Reed's death, Mrs. Reed made claims against his estate for his funeral bill, for allowances of a year's maintenance, homestead and exempt property. The adminis-

tratrix produced a copy of the antenuptial agreement in an attempt to deny Mrs. Reed her statutory allowances and share of her husband's property. The Supreme Court of Missouri held that the contract was not controlling, and stated that "a contract will be treated as abandoned where the acts of one party inconsistent with its existence are acquiesced in by the other." *Id.* at 286.

The Missouri court relied upon the *Restatement of the Law of Contracts,* stating:

That contractual duties arising out of formal contracts are discharged by the destruction or cancellation of the document is attested by Restatement of the Law of Contracts § 432, where, in the comment on page 814, it is said: "A formal contract is to such an extent regarded as bound up in the document containing the contract that it will not survive the document's destruction * * * if that is accompanied by a manifestation of intention of the person entitled to performance of the duties arising from the contract to discharge them." *Id.*

■ The evidence in the case herein, as in *Reed,* clearly shows the intent of both parties to revoke this agreement. Like tossing a document into a fire, tearing up a document is clearly a "positive and unequivocal act inconsistent with the continued existence of the written contract." *Id.*

■ We are not impressed by appellee's argument as shown in the excerpt of testimony, *supra,* that an oral promise made by appellant is sufficient to defeat her right to share in the marital assets. Any oral promise made before the marriage would not be enforceable for failure to comply with the Statute of Frauds. K.R.S. 371.010(5); *Glazebrook v. Glazebrook's Ex'r,* 227 Ky. 628, 13 S.W.2d 776 (1929). Any settlement agreement after the marriage attempting to dispose of the marital property must be, according to K.R.S. 403.180, in writing and signed by the parties to be effective. We hold that the antenuptial agreement has been rescinded and that there is no alternative theory under which to deny to appel-

lant her statutory right to a share of the marital property.

The next issue for consideration is that of appellant's entitlement to maintenance. The record shows that prior to the marriage appellant had worked for appellee at his cleaning business, Kleen Rite Company, and had earned between $5,000 and $6,000 annually for a 40-hour work week involving physical labor. At the time of the marriage, appellant was expecting a child, which was born January 6, 1981, but is now deceased.

There is a conflict between the parties as to the amount of work appellant performed for appellee's business after the marriage. Perhaps because appellant was no longer being paid for her services, neither party kept records of the hours she worked. Both agree that appellant worked as a homemaker and was responsible for the cooking, cleaning, gardening and child care.

The parties agreed that appellant brought nothing into the marriage except her clothes. Appellee, as owner of a farm and the cleaning business, provided his wife with shelter, food and clothing during the marriage. He further testified that he had accumulated no additional assets or property during the marriage except a tractor on which he had merely paid the interest. His business had not fared well during the years of the marriage, and he was heavily in debt. His "monthly estimate of expenses and income" showed him to have monthly personal and business expenses of $5,423.80, including a $993.00 farm payment, and a monthly income of $5,716.00. Appellant's affidavit of expenses showed her monthly expenses to be $320.00.

The parties had been separated once or twice during the marriage for a total period of between four to six weeks, and finally separated on March 22, 1982, slightly less than two years after their marriage.

On April 16, 1982, the court ordered respondent to pay petitioner the sum of $20 per week for maintenance, *pendente lite*. On August 2, the trial court entered its findings of fact and conclusions of law denying petitioner's request for maintenance

and requiring appellee to pay only court costs and appellant's attorney fee in the sum of $300.

Any discussion concerning the issue of maintenance must begin with a reference to the applicable statute. Section (1) of K.R.S. 403.200 provides that:

[T]he court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance: (a) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (b) is unable to support himself through appropriate employment . . . .

Once it is determined that the conditions in K.R.S. 403.200(1) have been satisfied, section (2) outlines "relevant factors" for the court to consider in determining the amount and duration of maintenance.

Pertinent case law provides that if the seeking party fails to satisfy the conditions of either K.R.S. 403.200(1)(a) or (1)(b), maintenance need not be granted. Thus, if the trial court finds that the party seeking maintenance can support himself through appropriate employment, there is no requirement for the court to make a finding as to whether or not that party lacks sufficient property to meet his needs. *Graham v. Graham*, Ky.App., 595 S.W.2d 720 (1980).

The trial court made no specific finding as to whether appellant's property is sufficient to meet her needs or whether appellant is able "through appropriate employment" to support herself. Findings made by the court relevant to K.R.S. 403.-200(1)(b) are as follows: "She is not working"; and, "Prior to the marriage Petitioner worked for Respondent's company as a cleaner, earning approximately $6,000.00 per year." There are no findings concerning her education or training, or lack thereof, or of her ability to secure employment at the time of the dissolution.

We are left to infer from those findings that were made, together with the court's denial of maintenance, that the court be-

lieves appellant is able to support herself as she did prior to the marriage regardless of her current lack of employment or skills. Such inferential findings are clearly erroneous under the facts of this case.

In *Casper v. Casper*, Ky., 510 S.W.2d 253 (1974), the former Court of Appeals held that the criterion provided by K.R.S. 403.-200(1)(b) relative to appropriate employment is relative rather than absolute and depends upon the standard of living established during the marriage. *Id.* at 255. If the *Casper* court was unwilling to find that a wife accustomed to a relatively high standard of living was engaged in "appropriate employment" by working as a clerk-typist, we are unable to so find in this case of an unemployed ex-wife who had previously earned no more than $6,000 per year. As the appellant in this case lacks a high school education, has no formal skills, and has *no* job, we find it difficult to comprehend how she can support herself at all, let alone in any fashion resembling the standard of living she enjoyed during the marriage wherein she resided in the new home of her husband valued at more than $75,000, and where four vehicles were at the parties' disposal. Appellant's brief employment by appellee during the marriage at less than generous wages is not justification for now forcing her to face the world as a tatterdemalion equipped only with a few kitchen utensils and personal items. *See Atwood v. Atwood*, Ky.App., 643 S.W.2d 263 (1982).

Appellee argues in addition the following: 1) That this was a "rocky and stormy" marriage, thus no maintenance was appropriate; and 2) That appellant's request for maintenance is a "fee" for services rendered during the marriage, or a "pay-off." If the wife is to be paid a "fee" for her services, he complains, who will pay the husband?

 Assuming this marriage indeed was "rocky and stormy" and further assuming appellant was the cause, neither fact has any bearing on the determination to be made under K.R.S. 403.200(1). *Chapman v. Chapman*, Ky., 498 S.W.2d 134 (1973). Fault can be considered, along with the other factors in K.R.S. 403.200(2), only in determining the *amount* of maintenance. *Id.* at 138.

In holding that appellant is entitled to maintenance in accordance with the provisions of K.R.S. 403.200(1), we are not suggesting that she is necessarily entitled to the $11,000 sum she requests for the purpose of purchasing an automobile and attending school.

The trial court should consider all relevant factors outlined in K.R.S. 403.200(2) in arriving at the amount and duration of the award. The fact that this marriage was for the short duration of two years is certainly a factor to be considered in determining an appropriate amount of maintenance. The court may also consider appellant's prospects for becoming self-supporting. *See Frost v. Frost*, Ky.App., 581 S.W.2d 582, 585 (1979). Additionally, with respect to K.R.S. 403.200(2)(f), the court should make a more specific determination of appellee's financial status and ability to pay maintenance. The fact that appellee is "heavily indebted," however, does not necessarily absolve him from the duty to pay maintenance.

In its findings of fact the trial court cited with apparent approval appellee's argument that because he provided necessities and shelter for appellant during the marriage, he should not be compelled to pay maintenance. We comment on this statement only to point out that it is generally because one spouse has provided the cash for necessities while the other has stayed home providing services that offer him or her no income or experience in the work force, that an award of maintenance is necessary. Approval of appellee's reasoning would effectively deny maintenance to a spouse who has spent his or her married life as a homemaker. As it pertains to the instant case, this finding ignores the testimony of both parties that appellant worked at least part-time in her husband's cleaning business, thereby con-

tributing in part to her own shelter and necessities.

In conclusion, we hold that the parties' previously executed antenuptial agreement has been effectively rescinded and does not control the property rights between them. The trial court should make findings of fact regarding the nature and extent of marital property and the proper division thereof pursuant to K.R.S. 403.190. We also hold that appellant is entitled to maintenance pursuant to the provision of K.R.S. 403.200 in an amount to be determined by the trial court after consideration of the statutory elements.

This action is reversed and remanded to the trial court for further proceedings in accordance with this opinion.

All concur.