# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Josie M. Bostick, Appellant,

v.

Earl A. Bostick, Sr., Respondent.

Appellate Case No. 2019-000157

―――――――――

Appeal From Beaufort County
Michèle Patrão Forsythe, Family Court Judge

―――――――――

Opinion No. 5898
Heard December 8, 2021 – Filed March 9, 2022

―――――――――

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

―――――――――

John Ryd Bush Long, of John R. B. Long, PC, of
Augusta, Georgia, for Appellant.

H. Grady Brown, III, and Bridget Hillebrand Norton,
both of Brown & Norton, LLC, of Beaufort; and J.
Michael Taylor, of Taylor/Potterfield, of Columbia, all
for Respondent.

―――――――――

**KONDUROS, J.:** Josie M. Bostick (Wife) appeals several determinations by the family court in this divorce action. She maintains the family court erred in denying her motion for continuance when her counsel withdrew approximately one week before trial. Wife also contends the family court erred in finding a large percentage of the sale price of Earl A. Bostick, Sr.'s (Husband's) dental practice constituted personal goodwill and therefore was not a marital asset. Additionally,

she argues the family court erred in finding she dissipated marital assets, in reducing her alimony award by a sizeable percentage from the temporary amount, and in awarding Husband $25,000 in attorney's fees. We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL BACKGROUND

Husband and Wife married in 1971. Two children were born of the marriage. Both children were of majority at the time of the divorce. Husband operated a successful dental practice in two locations—one in Ridgeland, South Carolina, Earl Bostick, Sr., D.M.D. and Associates, P.A, and Sea Island Dentistry in Bluffton, South Carolina.[1] Wife worked primarily in the home for much of the marriage but also assisted as a receptionist at times for the dental practice. Additionally, Wife served as pastor for Whosoever Will Outreach Ministry (the Church). This service was the source of marital discord as Wife began spending more and more time at the Church. In particular, Wife spent time with another Church leader, Prophet Scottie Johnson, both at the Church and elsewhere. The parties discussed counseling but Wife was uncooperative. Eventually, Wife's time spent away from home and with Prophet Johnson created sufficient strain in the marriage that Wife filed for divorce in August of 2015. However, the time for proceeding with the case expired, and the action was dismissed. Wife filed for divorce again in January of 2017.

Prior to the problems in their marriage, Husband and Wife had been financially generous to their churches. For example, Husband and Wife loaned $100,000 to make repairs and improvements to a church building that Wife had been given.[2] However, according to Husband's testimony, certain donations were not jointly made after the marriage began deteriorating. In 2014, Wife withdrew the entirety of one of her retirement accounts and gave it to the Church. In 2015, Wife made additional withdrawals from her retirement even though the marital home bills were being paid, she and Husband were taking an allowance from marital funds, and Wife had access to the parties' joint checking account. Wife's testimony was inconsistent as to how she spent this money. She claimed to have used it for living expenses as well as donating a large portion to the Church. Wife provided no documentation of these expenditures. As pastor, Wife had access and signatory privileges to the Church's bank funds.

---

[1] Husband had sold Sea Island Dentistry prior to the parties' marital issues as will be discussed further in section II.

[2] This church ultimately became the Church.

Wife filed for divorce a second time in 2017.  In September of 2018, Husband sold his Ridgeland dental practice to the parties' son for $569,000 plus $51,113.15 in accounts receivable.  Wife reviewed the contract of sale and agreed to its terms.  The contract divided the sale price into two components: (1) $144,860 for purchased assets and (2) $424,140 for goodwill.  Husband was retiring from the practice, which had previously borne his name, and the practice of dentistry altogether.  After the sale, Husband was to be available for up to sixty days to assist with transitioning the practice which would be denominated Ridgeland Smiles, LLC.  The sales contract also contained a covenant not to compete.

One week prior to trial, Wife's counsel requested to withdraw from representing Wife indicating he could no longer serve as her attorney out of "professional considerations."  Wife's counsel asked for a continuance for Wife to obtain new representation, but the family court denied the request, noting Wife had engaged several attorneys over the course of the two years since the filing and had failed to comply with various scheduling orders.  Wife secured new representation, and her new counsel appeared at the hearing, prepared to proceed although acknowledging the short timeframe for preparing Wife's case and the family court's previous ruling on the motion for continuance.

The parties had stipulated to a 50/50 division of the marital estate.  However, there were several points of contention at trial including the division of the proceeds from the sale of the Ridgeland dental practice, alimony, and Wife's dissipation of two of her retirement accounts.  The family court held the hard assets and accounts receivable components of the dental practice sale were marital assets to be divided 50/50.  However, the family court concluded the goodwill component of the sales prices was a nonmarital asset because it was personal goodwill attributable to Husband's professional status pursuant to *Moore v. Moore*, 414 S.C. 490, 779 S.E.2d 533 (2015).  Furthermore, after considering all the factors for alimony set forth by statute, particularly that Husband was 72 years old and was retiring, the family court reduced Wife's temporary alimony award from the temporary amount of $4,000 per month to $500 per month.[3]  Finally, the family court held Wife had dissipated the funds in her two retirement accounts and therefore counted $246,771 against her share of the marital estate.  The family court awarded Husband $25,000 in attorney's fees, stating Wife could afford to pay the fees and her lack of

---

[3] Section 20-3-130 of the South Carolina Code (2014) sets forth the alimony factors.

diligence and cooperation in discovery protracted the litigation. This appeal followed.

## STANDARD OF REVIEW

In appeals from family court, an appellate court reviews findings of fact and law de novo. *Lewis v. Lewis*, 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011). Nevertheless, this court recognizes the family court is in a superior position to make credibility determinations, and the appellant is not relieved of the burden to demonstrate error in the family court's findings. *Id*. The standard for reviewing a family court's evidentiary or procedural rulings is abuse of discretion. *Stoney v. Stoney*, 422 S.C. 593, 595 n.2, 813 S.E.2d 486, 487 n.2 (2018). "'An abuse of discretion occurs either when a court is controlled by some error of law, or where the order is based upon findings of fact lacking evidentiary support.'" *Sellers v. Nicholls*, 432 S.C. 101, 113, 851 S.E.2d 54, 60 (Ct. App. 2020) (quoting *Patel v. Patel*, 359 S.C. 515, 529, 599 S.E.2d 114, 121 (2004)).

## LAW/ANALYSIS

### I.     Motion for Continuance

Wife argues the family court erred in failing to continue the family court hearing after permitting withdrawal of Wife's legal counsel. We disagree.

"A motion for a continuance is a procedural matter involving the progress of a case." *Sellers*, 432 S.C. at 113, 851 S.E.2d at 60 (citing Rule 40(i)(1), SCRCP). "The denial of a motion for a continuance 'will not be upset unless it clearly appears that there was an abuse of discretion to the prejudice of appellant.'" *S.C. Dep't of Soc. Servs. v. Laura D.*, 386 S.C. 382, 385, 688 S.E.2d 130, 132 (Ct. App. 2009) (quoting *Williams v. Bordon's, Inc.*, 274 S.C. 275, 279, 262 S.E.2d 881, 883 (1980)).

In *Sellers*, this court affirmed the denial of a continuance to the mother in a child custody case. 432 S.C. at 116, 851 S.E.2d at 61-62. In that case, the mother was represented by two attorneys, one who sought relief because the mother had failed to pay her fees and the second who was disqualified due to her becoming a witness in the case. *Id*. at 116, 851 S.E.2d at 61. Additionally, the mother signed a consent order seven days prior to the custody hearing indicating she would represent herself if new counsel could not be obtained. *Id*.

Although Wife never *consented* to go forward in this case, she was represented at trial by competent counsel after having parted ways with multiple prior attorneys over the course of several years. The reason for the multiple changes in representation is not readily apparent from the record. However, Wife's last attorney indicated he could no longer represent Wife based on "professional considerations." This suggests any issue arose from within the attorney/client relationship with Wife as opposed to some outside force beyond Wife's control. Additionally, Wife had failed to comply with various scheduling orders, and the record demonstrates Wife was ably represented by her counsel and obtained certain beneficial results based on his representation. Based upon all the foregoing, we conclude the family court did not abuse its discretion in denying Wife's motion for continuance, nor was she prejudiced thereby. Accordingly, we affirm the family court's decision.[4]

## II.    Personal Goodwill and Husband's Dental Practice

Next, Wife contends the family court erred in finding a majority of the sale of Husband's Ridgeland dental practice constituted nonmarital, personal goodwill and was, therefore, not subject to equitable division. We agree.

In *Moore*, the supreme court recognized a business may contain two types of goodwill—enterprise, that attaching to the business itself, independent of any one individual, and personal, that attaching to the individual based on her skill and reputation. 414 S.C. at 511-12, 779 S.E.2d at 544. *Moore* adopted the viewpoint that enterprise goodwill is a marital asset subject to equitable division, while personal goodwill is a nonmarital asset belonging solely to the professional. *Id*.

---

[4] Husband argues Wife waived her right to appeal the denial of the continuance motion because her counsel did not formally renew the request the first day of trial. This argument is without merit. The family court's denial of the request was final and definitive when it denied the motion and instructed Wife to retain counsel and be ready for trial. Nothing changed between the time of the family court's ruling and the day of the hearing except that Wife successfully complied with the family court's instructions and secured new representation. To seek a continuance at that time would have been futile. *Cf. Dunn v. Charleston Coca-Cola Bottling Co.*, 311 S.C. 43, 46, 426 S.E.2d 756, 758 (1993) (holding when the court had overruled an objection that had been properly raised and passed on by the court, seeking a mistrial on that same basis would be futile).

"Enterprise goodwill is that which exists independently of one's personal efforts and will outlast one's involvement with the business." *In re Marriage of Alexander*, 857 N.E.2d 766, 769 (Ill. App. 3d 2006). "Enterprise goodwill 'is based on the intangible, but generally marketable, existence in a business of established relations with employees, customers and suppliers.'" *Yoon v. Yoon*, 711 N.E.2d 1265, 1268 (Ind. 1999) (quoting Allen Parkman, *The Treatment of Professional Goodwill in Divorce Proceedings*, 18 Fam. L.Q. 213, 215 (1984)). "[E]nterprise goodwill attaches to a business entity and is associated separately from the reputation of the owners. . . . The asset has a determinable value because the enterprise goodwill of an ongoing business will transfer upon sale of the business to a willing buyer." *Wilson v. Wilson*, 706 S.E.2d 354, 361 (W. Va. 2010). Many courts have found "[e]nterprise goodwill is an asset of the business and accordingly is property that is divisible in a dissolution to the extent that it inheres in the business, independent of any single individual's personal efforts and will outlast any person's involvement in the business." *Yoon,* 711 N.E.2d at 1268-69 (citations omitted).

"In contrast, [p]ersonal goodwill is associated with individuals." *Wilson*, 706 S.E.2d at 361. "It is that part of increased earning capacity that results from the reputation, knowledge and skills of individual people." *Id.* "The implied assumption is that if the individual were not there, the clients would go elsewhere." Business Valuation Resources, LLC, *BVR's Guide to Personal v. Enterprise Goodwill* 19 (Adam Manson & David Wood eds., 2011) . . . . "Accordingly, the goodwill of a service business, such as a professional practice, consists largely of personal goodwill." *Wilson*, 706 S.E.2d at 361. "[A]ny value that attaches to a business as a result of this 'personal goodwill' represents nothing more than the future earning capacity of the individual and is not divisible [in a divorce proceeding]."

> *Yoon*, 711 N.E.2d at 1269. In the family court setting, future earning capacity based on a spouse's reputation, knowledge and skills—personal goodwill—is considered nonmarketable and thus not property subject to division. *See Butler v. Butler*, 663 A.2d 148, 156 ( Pa. 1995) ("[W]here there has been an award of alimony, . . . to also attribute a value to goodwill that is wholly personal to the professional spouse, would in essence result in a double charge on future income.").
>
> One court noted the distinction as follows: "[w]here goodwill is a marketable business asset distinct from the personal reputation of a particular individual, as is usually the case with many commercial enterprises, that goodwill has an immediately discernible value as an asset of the business and may be identified as an amount reflected in a sale or transfer of a business." *Prahinski v. Prahinski,* 540 A.2d 833, 843 (Md. App. 1988) (citing *Wilson v. Wilson*, 741 S.W.2d 640 (Ark. 1987); *Taylor v. Taylor*, 386 N.W.2d 851 (Neb. 1986)). However, "[i]f the goodwill depends on the continued presence of a particular individual, such goodwill, by definition, is not a marketable asset distinct from the individual." *Id.*

*Moore*, 414 S.C. at 509-11, 779 S.E.2d at 543-44 (all alterations and omissions by the court).

In the instant case, if the dental practice were an ongoing concern, the majority, if not all, of the goodwill associated with it would be personal as it closely follows the factors set out in *Moore*.[5] However, *Moore* involved a *continuing* home décor

---

[5] Indicators of personal goodwill include:
• Small entrepreneurial business highly dependent on employee-owner's personal skills and relationships.
• No employment agreement between company and employee-owner.
• Personal service is an important selling feature in the company's product or services.
• No significant capital investment in either tangible or identifiable tangible assets.
• Only employee-owners own the company.

and lighting business as opposed to a professional practice that was sold after the parties separated, but prior to the equitable division of the marital estate.  *Id.* at 498, 779 S.E.2d at 537-38.  *Moore*, and all the cases cited to therein, recognize the issue of goodwill arises when the family court must discern a value for that intangible element of an ongoing business or professional practice.  Here, the family court was not tasked with ascertaining a value for the goodwill in the business.  The amount was set pursuant to the sales contract, and Husband was retiring altogether from the practice of dentistry.  This is simply a factual scenario that does not lend itself to the same type of analysis as *Moore*.

Notably, Husband had sold the other branch of his practice located in Bluffton, South Carolina, to another dentist, Dr. Farnsworth, in 2009, and Husband ceased practicing in that location.  Like the disputed sale in this case, the Farnsworth sales contract called for installment payments and included a goodwill component and covenant not to compete.  In the equitable division, Husband and the family court treated the remaining payments as marital property in the form of an account receivable to be evenly divided between Husband and Wife.  The amount of the remaining payments was placed on Husband's side of the ledger in making the equitable distribution.  While the handling of the Sea Island Dentistry sale is not governing as to the present dispute, we discern no reason for treating the sale of this practice differently.[6]

One unpublished case from Hawaii dealt with a very similar fact pattern.  Although in no way precedential, the court's disposition of the case is instructive.  In *Timon v. Timon*, No. 30713, 2014 WL 1003611, at *6 (Haw. Ct. App. March 13, 2014), the husband sold his dental practice pursuant to a mutually approved sales

---

• Sales largely depend on the employee-owner's personal relationships with customers.
• Product and/or services know-how and supplier relationships rest primarily with the employee-owner.
*Moore*, 414 S.C. at 514, 779 S.E.2d at 546.

[6] Husband argues Wife's review of and agreement to the sales contract waived her right to claim the goodwill portion of the sale was not Husband's personal goodwill and nonmarital property.  This argument is without merit.  The goodwill in the sales contract was not denominated as personal goodwill or otherwise described as nonmarital property.  As noted, the proceeds from the very similar Farnsworth sale were treated as marital property, and Wife had no reason to understand this transaction would be treated differently.

agreement after the parties separated but prior to the equitable distribution of assets. *Id*. The sales agreement attributed a portion of the sales price to personal goodwill, but also stipulated the court was not bound by the allocation of the purchase price. *Id*. The court concluded no evidence supported a finding a portion of the sales price was nonmarital, personal goodwill when the sales agreement did not require the husband to remain active in the dental practice.[7] *Id*. at 7.

> [T]here is nothing in the Dental Sale Agreement that required [the h]usband's continued presence as part of the dental practice that he sold. Indeed, although [the h]usband argues that he helped to transition patients and left his name on the office door for a period of time, he admitted that the Dental Sale Agreement did not obligate him to do such things. Therefore, because there was nothing in the Dental Sale Agreement that required [the h]usband's continued presence related to the dental practice, there is no evidence to support allocating part of the sale to his personal goodwill.

*Id.*

Likewise, in this case, no evidence supports the conclusion that any of the sales price constituted personal goodwill. Therefore, we conclude the family court erred in not treating the entirety of the sales price as marital property. We remand this matter to the family court so that it may modify the equitable division as necessary to effectuate the agreed upon 50/50 division of marital property.

### III. Dissipation of Assets

Wife contends the family court erred in finding she had dissipated marital assets of $246,771.00 by withdrawing this amount from her retirement accounts and deducting this amount from her share of the equitable division. We disagree.

---

[7] As the dissent notes, the sales contract in this case required Husband to be available to assist in transitioning the dental practice for up to sixty days and contained a covenant not to compete. However, the covenant not to compete was a hollow promise in this case as Husband was retiring from the practice of dentistry due to his age and health issues. Additionally, a sixty-day wrap-up period is readily distinguishable from a professional's ongoing, open-ended participation in a professional business.

"[A] spouse who removes or secretes marital property in contemplation of divorce is required to either account for it or have some part of its value charged against that spouse's share of the marital property." *Cooksey v. Cooksey*, 280 S.C. 347, 351-52, 312 S.E.2d 581, 584-85 (Ct. App. 1984), *overruled on other grounds by Dawkins v. Dawkins*, 386 S.C. 169, 687 S.E.2d 52 (2010). "[T]here must be some evidence of willful misconduct, bad faith, intention to dissipate marital assets, or the like, before a court may alter the equitable distribution award for such misconduct." *McDavid v. McDavid*, 333 S.C. 490, 496, 511 S.E.2d 365, 368 (1999). "[I]t is not unlawful for spouses to make outright gifts to other[s] during the marriage." *Panhorst v. Panhorst*, 301 S.C. 100, 106, 390 S.E.2d 376, 379 (Ct. App. 1990). However, "cases involv[ing] fraudulent transfers or dissipation of marital assets in contemplation of breakdown of the marriage" are distinguishable from simply "spen[ding] marital funds foolishly or selfishly" or "invest[ing] them unprofitably." *Id*. at 105, 390 S.E.2d at 379.

Wife maintains because Husband failed to prove she acted in bad faith, the family court erred in concluding she dissipated marital funds. Husband and Wife had been having marital problems, centered on Wife's time spent at the Church and specifically, her contact with Prophet Johnson, since 2012. Wife first saw an attorney about a divorce in December of 2014. As previously discussed, the time for proceeding with her initial divorce action passed and it was dismissed, but the parties never reconciled their differences. Wife again filed for divorce in January of 2017. From 2014 through 2016, Wife withdrew a total of $246,771 from retirement accounts and testified she either donated the money to the Church or used it for living expenses and attorney's fees. Had Wife simply donated money to a charity or organization, she might argue her decision was just foolish or unwise. However, her contributions, without Husband's assent, to the Church where she and Prophet Johnson had access to those funds, supports the family court's determination Wife acted in bad faith. Furthermore, these withdrawals occurred during the period of time the parties were experiencing significant marital discord even though the litigation that finally resulted in their divorce was not filed until 2017. Additionally, Wife was evasive in providing documentation about these accounts in discovery and was inconsistent with her testimony about them at trial. Reviewing the question of dissipation and equitable division de novo, we agree with the family court's findings, and Wife has failed to prove its decision on this issue is against the preponderance of the evidence. Accordingly, we affirm the family court's determination Wife dissipated marital assets and in deducting the amount from the equitable division.

## IV. Alimony Reduction

Next, Wife maintains the family court erred in reducing her temporary monthly alimony of $4,000 to a final award of $500 per month. We remand this issue for consideration.

> Per statute, the complete list of factors the family court can consider in setting alimony include: "(1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses and needs of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; and (12) prior support obligations; as well as other factors the court considers relevant."

*Butler v. Butler*, 385 S.C. 328, 338-39, 684 S.E.2d 191, 196 (Ct. App. 2009) (quoting S.C. Code Ann. § 20-3-130(C) (Supp. 2008)).

Wife argues the family court erred in not considering other employment opportunities for Husband beyond practicing dentistry. The record shows the family court made findings relating to the different factors set forth in section 20-3-130. The parties were dividing a sizeable marital estate, approximately $3.1 million, 50/50, both parties received social security benefits, and Wife was receiving income-generating property in the equitable division. Wife's contention the family court should have considered other employment opportunities for Husband is unpersuasive. In *Fuller v. Fuller*, 397 S.C. 155, 164, 723 S.E.2d 235, 240 (Ct. App. 2012), this court reviewed the family court's decision to reduce the wife's alimony award based on a change in circumstances, that being the husband's retirement at age 67. The court concluded the family court's finding regarding a spouse's earning capacity justifying a reduction in alimony could not be based *solely* on the spouse's age. *Id*. The court "decline[d] to adopt a bright-line rule that, where the supporting spouse reaches a particular age, that age alone is sufficient to justify a reduction or termination of alimony. Rather, the court should consider all relevant evidence and determine whether there has been a substantial

or material, unanticipated change in circumstances warranting a reduction in a supporting spouse's alimony obligation." *Id*.

In this case, Husband was five years older than the husband in *Fuller*, but more importantly, the family court considered Husband's health issues in finding he had no future earning capacity. His cataracts, tremors, post-traumatic stress disorder, and blood pressure issues all impeded his ability to continue working. Additionally, Husband had no other identifiable education or skills that would allow him to work in another field considering his health limitations. Furthermore, the parties had contemplated during the marriage that Husband would eventually retire and the parties would live on their social security benefits and savings.

In sum, we find the family court did not err in declining to impute income to Husband because he had retired. However, because our decision regarding the goodwill in Husband's dental practice results in a change of the equitable distribution, we remand the overall issue of alimony to the family court for reconsideration. *See Srivastava v. Srivastava*, 411 S.C. 481, 499 n.6, 769 S.E.2d 442, 452 n.6 (Ct. App. 2015) (acknowledging alimony determinations may warrant remand if the court's decision will alter the equitable distribution between the parties).

## V.     Attorney's Fees

Finally, Wife argues the family court erred in awarding Husband attorney's fees. We remand this issue for reconsideration.

In deciding whether to award attorney's fees the family court should consider the requirements of *E.D.M. v. T.A.M.*: "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; (4) effect of the attorney's fee on each party's standard of living." 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992). As to the amount of an attorney's fee award, the family court should consider the requirements of *Glasscock v. Glasscock*: "(1) the nature, extend, and difficulty of the case; (2) the time necessarily devoted. to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services." 304 S.C. 158, 161, 403 S.E. 2d 313, 315 (1991). Additionally, South Carolina courts have upheld an attorney's fees award, simply on the basis of misconduct by one party during the course of the litigation. *See Spreeuw v. Barker*, 385 S.C. 45, 72-73, 682 S.E.2d 843, 857 (Ct.

App. 2009); *see also Taylor v. Taylor*, 333 S.C. 209, 220, 508 S.E.2d 50, 56 (Ct App. 1998).

In this case, the family court ordered Wife to pay $25,000 of Husband's attorney's fees. It determined Wife had ample resources to pay a portion of his fees, and Wife's retention of numerous attorneys and lack of cooperation in discovery warranted the award in that amount. However, the family court also found Husband prevailed on essentially all of the contested issues in the case including determining the goodwill in Husband's dental practice was nonmarital, Wife's dissipation of assets, and the reduction in alimony from the temporary order. Because we reverse the family court on the goodwill issue, the calculus changes somewhat with regard to the level of beneficial results achieved by Husband's counsel. Therefore, we remand the attorney's fee issue for consideration by the family court as well. *See Srivastava*, 411 S.C. 499 n.6, 769 S.E.2d at 452 n.6 (acknowledging attorney's fees determination may warrant remand if the court's decision will alter the beneficial results obtained).

**CONCLUSION**

We affirm the family court's denial of Wife's motion for continuance and its finding as to Wife's dissipation of funds. We reverse the family court's finding the goodwill component of the sale of Husband's dental practice was a nonmarital asset and hold it is part of the marital estate. Therefore, we remand this matter to the family court to modify the equitable division as necessary to effectuate the agreed upon 50/50 division of marital property. Additionally, we remand the issues of alimony and attorney's fees in light of our other holdings herein.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**HEWITT, J., concurs.**

**HILL, J.**, concurring in part and dissenting in part:

I concur in the majority opinion except as to the goodwill (Section II) and alimony (Section IV) issues. With respect, I diverge from the majority on these two issues because I would affirm the trial court's finding that Husband's interest in his Ridgeland dental practice was personal goodwill not subject to equitable division. As the majority well states, the dental practice had many of the characteristics of personal goodwill as set forth in *Moore v. Moore*, 414 S.C. 490, 779 S.E.2d 553 (2015). The fact that the practice was sold after the filing of the marital litigation

did not alter those characteristics. It bears mentioning the sales contract obligated Husband to continue in the practice for sixty days to assist with the transition. Husband also had to sign a five year covenant not to compete. In fact, the sales contract states Husband was paid $424,140 of the purchase price "as the consideration for the Goodwill and the Restrictive Covenant." We have held covenants not to compete are not marital property, even when they accompany the sale of a marital asset. *Ellerbe v. Ellerbe*, 323 S.C. 283, 292, 473 S.E.2d 881, 886 (Ct. App. 1996). Importantly, the sales contract was structured so as to acknowledge that the goodwill was owned and being sold by Husband individually, whereas the other assets of the practice were owned and sold by his professional association. While the majority is correct that Husband was retiring from practice, that weighs in favor of his claim that the goodwill portion of the sales amount represented his potential post-divorce future earnings. How the parties treated the proceeds of the earlier sale of Husband's other dental practice location does not change the goodwill analysis. The parties may have had many reasons to treat the sales differently.

Goodwill in professional dental practices like Husband's has always been classified as personal, non-marital property. *See Dickert v. Dickert*, 387 S.C. 1, 6–7, 691 S.E.2d 448, 450–51 (2010); *Donahue v. Donahue*, 299 S.C. 353, 359–60, 384 S.E.2d 741, 744–45 (1989). Like *Moore*, these decisions did not hinge on whether the business was still an ongoing concern at the time of trial.

Like the majority, I would reverse and remand the alimony issue. But I would remand so the trial court could consider Husband's income from the goodwill proceeds in fashioning a fair and equitable alimony award. Although the trial court was correct in ruling Wife had no right to any share of the $424,140 in goodwill and restrictive covenant proceeds Husband realized, the proceeds should have been considered in the alimony analysis.