**Allan B. KLEET, Appellant,**

v.

**Vicki KLEET (now Cooper), Appellee.**

**No. 2006–CA–000035–MR.**

Court of Appeals of Kentucky.

Aug. 3, 2007.

Discretionary Review Denied by Supreme Court Oct. 15, 2008.

Eugene L. Mosley, M. Thomas Underwood, Louisville, KY, for appellant.

William F. McGee, Jr., Sarah Perry McGee, Smithland, KY, for appellee.

Before ABRAMSON, ACREE, and HOWARD, Judges.

## OPINION

HOWARD, Judge.

Allan B. Kleet (hereinafter "Allan") appeals from the McCracken Family Court's disposition of property in the dissolution of his marriage to Vicki Kleet (hereinafter "Vicki"). Allan and Vicki were married for 17 years. No children were born of the marriage. The family court entered an interlocutory decree of dissolution on September 9, 2004, reserving for later adjudication issues of property division, maintenance, and attorney fees. After discovery and a two-day hearing, the court entered its Findings of Fact, Conclusions of Law and Supplemental Decree on October 14, 2005, denying Vicki's claims for maintenance and attorney fees and dividing the parties' property. Allan filed this appeal and Vicki filed a cross-appeal, which was subsequently dismissed at her request. We affirm the family court's order.

Both parties were employed during the marriage, with Allan's earnings significantly outpacing those of Vicki. Throughout the marriage, Vicki worked as a dental hygienist. Allan is a certified public accountant and for several years served as the chief financial officer of People's Bank.

Vicki's earnings were relatively stable during the marriage, ranging from $22,531.00 to $38,171.00. Allan's income varied widely. In three different years he reported no W–2 earnings. On the other hand, in 1999, when People's Bank sold, Allan's W–2 earnings were $4,167,011.00. Excluding that one exceptional year, Allan averaged approximately $100,000 in income per year throughout the course of the marriage.

The family court valued the total property of the parties at $6,489,719.00, with $1,906,977.40 set aside as Allan's nonmarital property and $20,000 as Vicki's nonmarital property. Included in Allan's nonmarital property was his premarital property which was still in existence after the marriage, in the sum of $1,237,668.00. The balance of the nonmarital property restored to Allan consisted of the proceeds of two notes receivable and the value of stocks and bonds owned at the time of the marriage and exchanged during the marriage. The family court found that Allan had satisfactorily traced these premarital assets into assets existing at the time of the divorce. However, the family court rejected the remainder of Allan's tracing evidence, and specifically characterized all of the increase in the value of the exchanged premarital assets as marital property.

The family court valued the marital estate at $4,562,471.60 and awarded 55% of that sum to Allan and 45% to Vicki. However, the court credited Allan's award of marital property with $2,052,297.00, an amount the court found that Allan had dissipated the marital estate. In other words, $2,052,297.00 of the $2,509,507.80 awarded to Allan consisted of moneys that he had given away and that no longer existed, at least in the possession of these parties. The court also credited Allan's marital property award with $90,000 for his interest in a condominium in Florida which it found that he owned jointly with

his sister and brother-in-law. The net result is that Vicki was awarded approximately 80% of the marital assets actually in the possession of the parties at the time of the divorce. Additional facts will be discussed below, as necessary to resolve the issues on appeal.

The legal standards applicable to our review of the family court's judgment are that findings of fact are reviewed only to determine if they are clearly erroneous. CR 52.01; *Sexton v. Sexton,* 125 S.W.3d 258 (Ky.2004); *Ghali v. Ghali,* 596 S.W.2d 31 (Ky.App.1980). CR 52.01 states, in part,

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

■ Decisions of the family court concerning the division of marital property are within the discretion of that court, and we will not disturb those decisions except for an abuse of that discretion. *Neidlinger v. Neidlinger,* 52 S.W.3d 513 (Ky.2001); *Cochran v. Cochran,* 746 S.W.2d 568 (Ky. App.1988). In *Cochran,* we stated,

> The property may very well have been divided or valued differently; however, how it actually was divided and valued was within the sound discretion of the trial court.

*Cochran,* 746 S.W.2d at 570.

### Restoration of Nonmarital Assets

Allan first asserts that the family court erred in failing to award him all of his nonmarital property, and specifically in finding that he did not meet his burden to prove that his exchanged premarital property and its growth retained its nonmarital character. We disagree.

KRS 403.190 controls the disposition of property in a dissolution of marriage ac-

tion. The statute provides a three-step process for dividing property:

> (1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably divides the marital property between the parties.

*Travis v. Travis*, 59 S.W.3d 904, 909 (Ky. 2001), (footnotes omitted).

██ Property acquired during the marriage and before a decree of legal separation is presumed to be marital property, "regardless of whether title is held individually or by the spouses in some form of co-ownership[.]" KRS 403.190(3). When property consists of both marital and nonmarital elements, the trial court must determine the parties' marital and nonmarital interests. Kentucky uses the "source of funds" rule to characterize property or to determine the parties' nonmarital and marital interests. *Travis*, 59 S.W.3d at 909. The source of funds rule "simply means that the character of the property, i.e., whether it is marital, nonmarital, or both, is determined by the source of the funds used to acquire property." *Travis*, 59 S.W.3d at 909, n. 10.

██ If nonmarital property increases in value during the marriage, the trial court must determine the reason for the increase. If the increase is attributable to general economic conditions, it is nonmarital; where the parties' joint efforts cause the increase, it is marital property. *Goderwis v. Goderwis*, 780 S.W.2d 39 (Ky. 1989). However, the burden of proof is on the party claiming the increase in value to be nonmarital, *Travis, supra,* and he must satisfy that burden by clear and convincing evidence. *Brosick v. Brosick*, 974 S.W.2d 498 (Ky.App.1998). In *Travis*, the Kentucky Supreme Court stated,

> KRS 403.190(3), however, creates a presumption that any such increase in value

is marital property, and, therefore, a party asserting that he or she should receive appreciation upon a nonmarital contribution as his or her nonmarital property carries the burden of proving the portion of the increase in value attributable to the nonmarital contribution. By virtue of the KRS 403.190(3) presumption, the failure to do so will result in the increase being characterized as marital property.

*Travis*, 59 S.W.3d at 910–11, (footnotes omitted).

██ KRS 403.190(2)(b) requires a court to assign each spouse all of his or her nonmarital property, including "[p]roperty acquired in exchange for property acquired before the marriage...." When nonmarital property is not in existence at the time of dissolution, the party claiming a nonmarital interest in a presently owned asset must "trace" the previously owned asset into an existing asset. Tracing is "[t]he process of tracking property's ownership or characteristics from the time of its origin to the present." *Sexton v. Sexton*, 125 S.W.3d 258, 266 (Ky.2004), *quoting Black's Law Dictionary* 1499 (7th ed.1999).

The Kentucky Supreme Court has "recognized that tracing to a mathematical certainty is not always possible, [and] '[w]hile such precise requirements for nonmarital asset-tracing may be appropriate for skilled business persons who maintain comprehensive records of their financial affairs, such may not be appropriate for persons of lesser business skill or persons who are imprecise in their record-keeping abilities.'" *Terwilliger v. Terwilliger*, 64 S.W.3d 816, 820 (Ky.2002), *quoting Chenault v. Chenault*, 799 S.W.2d 575, 578 (Ky.1990). However, in *Polley v. Allen*, 132 S.W.3d 223 (Ky.App.2004), we stated,

> A claimant cannot meet the tracing requirement simply by showing that he or

she brought nonmarital property into the marriage without also showing that he or she has spent his or her nonmarital assets in a traceable manner during the marriage.

*Polley,* 132 S.W.3d at 229.

Allan contends that the family court erred in holding him to the more stringent tracing requirements, applicable to "skilled business persons." He claims that "stricter tracing standards may not be appropriate for skilled business persons who do not ordinarily maintain comprehensive records of their personal finances." Allan also maintains that *Terwilliger* is distinguishable because Mr. Terwilliger attempted to trace his interest into a business that was marital property, while he is tracing his personal investments.

Allan's attempt to distinguish *Terwilliger* is unpersuasive. As found by the family court, Allan is a certified public accountant with 30 years' experience and was a successful chief financial officer for a large bank. The family court did not abuse its discretion in holding Allan to the more stringent tracing requirements, if indeed it did so. However, while noting his professional experience and expertise, the family court never stated that it was holding Allan to a higher standard, and it is not clear that it did so. Rather, it appears that the court held that he did not satisfy any standard to sufficiently trace his premarital assets into assets existing at the time of the divorce.

■ The family court found that Allan selectively produced documentary evidence supporting his nonmarital claim, while claiming the inability to produce other records. The court stated, "[w]hile it may have been difficult to trace nonmarital assets that have been exchanged, this court finds that [Allan] has simply chosen not to produce records that would allow him to do that." Ultimately, the family court found that the evidence Allan offered to support his tracing, by an expert witness, was not credible because he had not given her sufficient or accurate information on which to base her opinion. This finding is not clearly erroneous and we will not disturb it on appeal.

There was also a problem with the method used by the expert witness. Allan's attempted tracing consisted of testimony and reports by another certified public accountant, Ms. Helen Cohen. Ms. Cohen did not attempt to do a traditional tracing of any specific premarital asset into any currently existing asset. She testified that she did not follow the formula set out in *Brandenburg v. Brandenburg,* 617 S.W.2d 871 (Ky.App.1981), at all (she felt it was "inapplicable"). Rather, she used an approximate growth rate, the parties' joint tax returns, depositions of each party, interviews with Allan and Allan's statements to produce a "forensic tracing" model. Instead of using the parties' actual living expenses during the marriage, Ms. Cohen testified that she estimated the parties' living expenses based upon Allan's statements and attributed all of Allan's gifts to his family, churches, and his accountant, as coming from marital property. Ms. Cohen asserted, as summarized by the family court, that, "by taking the income during the marriage and subtracting out the [estimated] yearly living expenses during the years of marriage, a percentage of nonmarital to marital assets could be determined." Ms. Cohen then used that calculated percentage to determine the respective marital and nonmarital interests in stocks purchased during the marriage. While Allan has cited us to several cases from other jurisdictions which discuss, with some degree of approval, "forensic tracing," we know of no authority accepting as satisfactory so amorphous a method of "tracing" as that presented in this case.

The family court assigned Allan $1,906,977.40 as his nonmarital property, including $599,309.47 which represented the face value of certain exchanged property. Vicki does not contest this award. But the family court refused to accept Allan's tracing method, so as to entitle him to any increase in the value of the exchanged assets. While it may be very likely that some portion of this increase was due to general economic conditions, we agree with the trial court that Allan did not provide clear and convincing evidence of how much of the increase was due to these conditions, as opposed to the parties' joint efforts. There is no presumption that general economic conditions caused the increase in value. Again, Allan had the burden of proof on that issue. *Travis, supra.* If Allan failed to receive as his nonmarital property all that he should have, it is because he failed to meet his burden of proof.

Allan cites *Allen v. Allen,* 584 S.W.2d 599, 600 (Ky.App.1979), for its holding, "We think the requirement of tracing should be fulfilled, at least as far as money is concerned, when it is shown that nonmarital funds were deposited and commingled with marital funds and that the balance of the account was never reduced below the amount of the nonmarital funds deposited." However, the Kentucky Supreme Court declined to adopt the reasoning of *Allen* in *Chenault, supra,* leaving the validity of this rule in doubt. Furthermore, there was conflicting evidence presented on this issue. While Ms. Cohen testified that the value of the accounts never dropped below their premarital value, Vicki testified that it did at one point, as the investment accounts were used to pay for the construction of the parties' home. Since Allan testified that he could not produce records of his investment accounts from the early years of the marriage, there is no way to definitively resolve this issue. The evidence was far from conclusive and we cannot say that this finding of the trial court was clearly erroneous.

Allan also maintains that the family court abused its discretion in concluding that he did not provide sufficient evidence to support his claim of a non-marital interest in the marital residence. The family court's findings relating to the marital residence are as follows:

> The parties purchased land and constructed a home during their marriage. The parties agreed that the value of the property to be $600,000.00. This asset, while substantial, did not receive much attention during the hearing. In fact, the Husband's expert seemed to lump it into the total assets owned by the parties, leaving the Court with the belief that it was fully marital. Yet, the Husband claimed to have paid for some of it from his premarital funds. The Husband introduced no documentation of payment with nonmarital funds. Therefore, the Court finds the asset to be marital.

As noted above, Vicki also testified that some of Allan's premarital investment accounts were used to pay for the construction of the house. But Allan failed to offer any evidence of how much of those accounts went into the construction. The family court's findings on the marital residence are not clearly erroneous. While Allan probably had some nonmarital interest in the property, he failed to introduce sufficient evidence to allow the trial court to award him that interest.

Allan next contends that the family court erred in finding that a $20,000 check from his father, payable to Vicki, was her nonmarital property. He claims that Vicki failed to rebut the presumption that the $20,000 check was marital property. The family court noted that,

The donor did not testify concerning his intent.[1] However, the Court must construe the intent based upon the actual facts, i.e. a giving of money in one's name and a relinquishment of that money by the donor as a gift to the person (in whose name) it was given. After the gift was made, the Wife asked or directed the Husband to invest it. It likewise has been mingled with marital and his nonmarital assets.

■ The family court's finding that the $20,000 check was a gift to Vicki is reviewed under the clearly erroneous standard. *Sexton, supra.* A donor's intent is the "primary factor" in determining if a gift is made jointly or to one spouse. Such intent "may be inferred from the surrounding facts and circumstances[.]" *Sexton,* 125 S.W.3d at 268–69. Vicki introduced into evidence the canceled check, made payable to "Mrs. Allan B. Kleet," and a handwritten note to Vicki and Allan containing the statement, "use for house or as you wish." We note that the court also allowed Allan $70,000.00 in similar gifts from his father, as his nonmarital property. Although we might have found differently on this issue, particularly as the money was co-mingled with marital assets, we cannot say that the family court's finding was clearly erroneous.

**Dissipation of Marital Assets**

Allan also maintains that the family court erred in finding that he dissipated marital property by giving cash gifts totaling over two million dollars to his sister and brother-in-law and to his accountant between May 9, 2002, and December 30, 2002. These gifts, as listed by the trial court, were as follows.

| | |
|---|---|
| May 9, 2002 | $1,000,000.00 |
| May 19, 2002 | 11,000.00 |
| June 6-11, 2002 | 26,639.00 |
| June 6-11, 2002 | 308,851.00 |
| August 8-17, 2002 | 617,702.00 |
| November 11-14, 2002 | 29,705.00 |
| December 12-30, 2002 | 23,400.00 |
| for the total sum of | $2,017,297.00 |

■ Dissipation may be found when marital funds are expended for a nonmarital purpose, "(1) during a period when there is a separation or dissolution impending; and (2) where there is a clear showing of intent to deprive one's spouse of her proportionate share of the marital property." *Brosick v. Brosick,* 974 S.W.2d 498, 500 (Ky.App.1998), *citing Robinette v. Robinette,* 736 S.W.2d 351 (Ky.App.1987). The standard of proving dissipation is preponderance of the evidence. *Brosick,* 974 S.W.2d at 502. Gifts to family members can constitute dissipation of marital assets. *Robinette,* 736 S.W.2d at 354.

■ The family court found that Allan made the gifts "during a period that the Husband was contemplating dissolving the marriage." Allan claims that this finding is "pure speculation, and an abuse of discretion," and that "no witnesses testified that [he] told them he was contemplating a divorce prior to September 2003." While it is true that there was no direct evidence that Allan contemplated seeking a divorce himself, ample evidence exists that Allan knew that a divorce was possible or even likely at the time of the disputed gifts. For example, Allan's sister testified that Allan told her that he had Vicki followed by an investigator "four to five years ago" when he suspected Vicki of having an extramarital affair. One of Allan's friends testified that around 2001, Allan knew that a divorce "was probably going to be coming, this divorce.... He knew it was some-

---

1. Allan's father was listed as a witness, and his deposition was scheduled at one time. However, in the end, he did not testify.

thing that was inevitable." Allan himself testified that he and Vicki periodically discussed divorce and that during 2001 or 2002, he asked Vicki what she would settle for if they divorced. We have previously recognized that dissipation can occur in anticipation of the other party filing for a divorce; it is not necessary that the party accused of the dissipation intend to file himself. *Barriger v. Barriger*, 514 S.W.2d 114 (Ky.1974). The family court's finding that the gifts were made when a dissolution was impending was not clearly erroneous.

Allan also claims that there was no evidence that the gifts were made with the intent of depriving Vicki of her share of the marital assets. He points out that he had a history of making gifts to family members, especially to his sister and his brother-in-law. This is true. However, these gifts were usually in amounts of $5,000 or $10,000. The amounts given between May and December of 2002 far exceeded those given prior to that time. Furthermore, Vicki testified that she knew of Allan's practice of giving his sister and brother-in-law gifts or loans in generous, yet smaller amounts, but Allan never informed her that he was giving them amounts approximating two million dollars. Allan acknowledged that he did not tell Vicki of these large gifts. Also, Allan did not report the total amount of the gifts on his gift tax return until after their discovery in this action. Substantial evidence exists that Allan attempted to hide the facts of the gifts from Vicki. As cited above, giving of gifts to one's family, when not a "marital enterprise," can constitute dissipation. *Robinette*, 736 S.W.2d at 354. Giving away two million dollars, without discussing it with one's spouse, is not easily categorized as a "marital enterprise." The finding that Allan made these gifts to deprive Vicki of her share of the marital estate is not clearly erroneous. The family court did not err in finding that

Allan dissipated marital assets by making these gifts, nor abuse its discretion in crediting them to him as the majority of his share of the marital estate.

**Division of Marital Property**

Allan next makes two assertions of error with regard to the family court's division of the marital property. First, he claims that the court abused its discretion in refusing to consider Vicki's alleged failure to contribute to the acquisition of that property. Allan bases this claim on testimony depicting Vicki as an unsupportive spouse who did not contribute to the marital home. Allan contends that "[w]hether a spouse's failure to contribute to the acquisition of marital assets can be considered in the property division process is a question of first impression in Kentucky."

Again, our standard of review on issues relating to the family court's division and award of marital property is to ask whether the trial court abused its discretion in making that award. *Cochran, supra.* We disagree with Allan's characterization of this issue as one of first impression, and after thoroughly reviewing the conflicting evidence, conclude that the family court did not abuse its discretion in its consideration of each party's contribution to the acquisition of the marital property.

The contribution of each spouse is one of the relevant factors enumerated in KRS 403.190(1)(a)-(d) in determining the division of marital property. The family court separately considered each of the enumerated factors. In its discussion relating to the relative contributions of the parties, the trial judge stated,

> The court notes that the parties' marriage was not depicted as that which the normal couple would like to enjoy, however, for whatever reason the Husband continued to stay married to the Wife and continued to enjoy some of the mari-

tal benefits including sexual cohabitation. Both parties worked outside the home within the range of their potential earning power. Neither complained that the other was not working to their potential.

Referring to the KRS 403.190(1) exclusion of marital misconduct as a factor in marital property division, the family court stated that "being a bad spouse is not in the list of considerations."

 The family court was in the best position to judge the credibility of the witnesses, *Hunter v. Hunter,* 127 S.W.3d 656 (Ky.App.2003), and it did not accept Allan's depiction of Vicki as not supportive of him or the marital home. The family court carefully considered the parties' relative contributions to the acquisition of marital property. While we may have decided differently on the division of marital property, we cannot say that the award of 55% of the marital property to Allan and 45% to Vicki was an abuse of discretion.

 Next, Allan contends that the family court erred in finding that he had an interest in a Florida condominium owned jointly with his sister and brother-in-law. Allan insists, as he testified in the trial court, that he simply gave his sister and brother-in-law $90,000 to purchase the condominium, and that he owned no interest in the property. However, the family court noted that,

> The Husband's sister testified that a Florida condominium was purchased as a partnership with the Husband and his sister and brother-in-law being the partners. . . . The $90,000.00 was omitted from the Husband's list of gifts to his sister or brother-in-law. . . . [B]ased upon the clear testimony, Husband has an interest in the condominium.

In fact, both Allan's sister and his brother-in-law testified that the condominium was a partnership between them and Allan. While Allan cites to other seemingly contradictory testimony by his sister and brother-in-law that the $90,000 was a gift, the family court's findings are supported by substantial evidence and are not clearly erroneous.

**Credit for Moneys Advanced Toward the Division of Marital Property**

Finally, Allan asserts that the family court erred in failing to credit him with amounts he paid Vicki during the litigation. In an agreed order entered on September 9, 2004, the family court found that Allan advanced Vicki $100,000 from marital property. The court further directed that Allan "reserves the right to argue that the advancement should be credited against property division. [Vicki] reserves the right to argue that the advancement should be characterized as fees and/or maintenance." In its final order, the family court did not award Vicki maintenance or attorney fees and therefore credited Vicki with the marital property in her possession, including this $100,000.

Allan asserts that he advanced Vicki an additional $125,000 for which he was not given proper credit. However, he fails to provide any citation to the record for this contention as required by CR 76.12(4)(c)(iv). Notwithstanding this failure, we have diligently searched the record and find no proof of any such additional advances.

While we recognize that at first blush there may appear to be some inequity in one party receiving 80% of the currently existing marital assets, we cannot say that any finding of fact made by the family court was based on less than substantial evidence or was clearly erroneous. Likewise, while we might have divided the marital property somewhat differently, we cannot say that the trial judge abused her discretion in making her award. The Sup-

plemental Decree of the McCracken Family Court is affirmed.

ALL CONCUR.