RENDERED: OCTOBER 16, 2020; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1014-MR

JOLEEN BRENDA GONZALEZ
(FORMERLY KNOWN AS JOLEEN B. DOOLEY)                    APPELLANT

                    APPEAL FROM WARREN CIRCUIT COURT
v.              HONORABLE DAVID A. LANPHEAR, JUDGE
                    ACTION NO. 16-CI-00658

ANDRE W. DOOLEY                                                         APPELLEE

OPINION
AFFIRMING IN PART,
REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE: ACREE, GOODWINE, AND JONES, JUDGES.

ACREE, JUDGE: Joleen Gonzalez appeals the Warren Family Court's June 7,

2019 findings of fact, conclusions of law, and decree dissolving her marriage to

Andre Dooley. The decree awarded the parties joint custody of their minor child

(Child), with Andre designated as primary residential parent. It further ordered

Joleen to pay child support and to reimburse Andre for certain marital assets and debts accumulated during the marriage. Upon careful consideration, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

Joleen and Andre married in 2012. On May 28, 2016, before Joleen petitioned for divorce, Andre and Child, who was nearly two years old at the time, relocated to Kansas City, Kansas, where Andre's parents lived. According to Joleen, Andre did not consult her about relocation. Instead, she asserts, she received a text message from Andre at approximately 10:55 p.m. on May 28, 2016, stating his intention to look for employment, but that he would return to Kentucky. Andre, on the other hand, claims he and Joleen discussed moving to Kansas City where he could seek employment and where his parents were willing to assist them. He was hopeful she would soon join them and encouraged her to do so.

Instead, Joleen filed a petition to dissolve the marriage on June 20, 2016. Joleen and Andre filed their respective motions for temporary custody of Child; both motions requested joint custody and sought designation of the respective movant as primary residential parent. After conducting an evidentiary hearing, the family court ordered temporary joint custody of Child, with Andre as the temporary primary residential parent. Joleen was awarded temporary

timesharing.  Subsequently, the parties entered an agreed order requiring Joleen to pay temporary child support.

The family court conducted a final hearing and entered its findings of fact, conclusions of law, and decree.  As to custody, the decree was consistent with the temporary custody order, awarding joint custody to the parties, designating Andre as the primary residential parent, and granting Joleen timesharing.  In addition, Joleen was ordered to pay Andre:  (1) $778.97 per month in child support; (2) $3,300.00 representing one-half of their 2015 joint income tax refund; and (3) $1,250.00 representing one-half of a US Bank credit card debt assigned to be paid by Andre.  Joleen filed a motion for reconsideration or, in the alternative, a motion to alter, amend, or vacate the portion of the order pertaining to custody.[1] The motion was denied.  This appeal followed.

## STANDARD OF REVIEW

The applicable standard of review in child custody cases is set forth as follows:

> In reviewing a child-custody award, the appellate standard of review includes a determination of whether the factual findings of the family court are clearly erroneous. A finding of fact is clearly erroneous if it is not supported

---

[1] Joleen retained new counsel after the family court entered its decree.  For cautionary purposes, prior to filing her motion for reconsideration or, in the alternative, a motion to alter, amend, or vacate, her counsel filed a notice of appeal of the June 7, 2019 findings of fact, conclusions of law, and decree.  This Court entered an order on August 19, 2019, holding the appeal in abeyance for thirty days to allow the family court to rule on her post-trial motion.  On September 16, 2019, this Court entered an order returning the case to the Court's active docket.

-3-

by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person. Since the family court is in the best position to evaluate the testimony and to weigh the evidence, an appellate court should not substitute its own opinion for that of the family court. If the findings of fact are supported by substantial evidence and if the correct law is applied, a family court's ultimate decision regarding custody will not be disturbed, absent an abuse of discretion. Abuse of discretion implies that the family court's decision is unreasonable or unfair.

*B.C. v. B.T.*, 182 S.W.3d 213, 219 (Ky. App. 2005) (citations omitted). Likewise, as concerns marital property division, we will affirm the family court if it has correctly applied the law to findings of fact that are supported by substantial evidence, provided there is no abuse of discretion. *Kleet v. Kleet*, 264 S.W.3d 610, 613 (Ky. App. 2007).

## ANALYSIS

Joleen claims the family court erred by: (1) designating Andre as the primary residential parent; (2) ordering her to pay $778.97 per month in child support; (3) requiring her to reimburse Andre $3,300.00 for one-half of a 2015 federal income tax refund; and (4) requiring her to reimburse Andre $1,250.00 for one-half of an alleged marital debt on his US Bank credit card. We address each issue in turn.

*Custody:*

Joleen first claims the family court erred because it failed to assess the propriety of Andre's relocation with Child. Specifically, she contends the court erred by failing to determine the relocation was not in Child's best interest.

We do not agree, generally, with Joleen's contention that the family court failed to consider the relocation. It was only after hearing conflicting testimony about *how* and *why* the relocation occurred that the court made a custody determination. However, *when* the relocation occurred is also a significant factor in the analysis. That factor causes this Court to disagree, specifically, with Joleen's contention that the family court was obligated to determine whether relocation was in Child's best interest.

Unlike the cases upon which Joleen relies,[2] this relocation occurred before initiation of dissolution proceedings and before any court order affected Joleen's and Andre's right to joint custody. That right is recognized in KRS[3] 405.020(1) and says, "The father and mother shall have the joint custody, nurture, and education of their children who are under the age of eighteen (18). . . ." That

---

[2] Joleen cites *Frances v. Frances*, 266 S.W.3d 754 (Ky. 2008) and Justice Cunningham's dissent in *Pennington v. Marcum*, 266 S.W.3d 759 (Ky. 2008) to support her position. In *Frances*, the parents at issue entered into an informal custody agreement (which did not formalize into a temporary custody order) prior to the issue of relocation arising. In *Pennington*, a final custody decree had been entered prior to relocation.

[3] Kentucky Revised Statutes.

statute, like KRS 403.270(2), envisions that issues relating directly or indirectly to a child are resolved jointly by the joint custodians. *Squires v. Squires*, 854 S.W.2d 765, 769 (Ky. 1993) ("joint custody envisions shared decision-making").

But there is an important distinction between the custody statutes. We begin by recognizing that "parents have a constitutionally protected liberty interest in rearing their children without government interference." *Walker v. Blair*, 382 S.W.3d 862, 866 (Ky. 2012). The Constitution did not create that liberty interest, but it does prohibit the government from "infring[ing] on the fundamental right of parents to make child rearing decisions . . . ." *Troxel v. Granville*, 530 U.S. 57, 72-73, 120 S. Ct. 2054, 2064, 147 L. Ed. 2d 49 (2000). Put simply, KRS 405.020(1) recognizes that the right and liberty interest necessarily exist coterminously, and jointly, in two people – the child's mother and the child's father.

Joint custody rights under KRS 405.020(1) are exercised autonomously by the parents, independently of government interference, and the parents' decisions are presumed in the law to be made in the child's or children's best interest. *Walker*, 382 S.W.3d at 866 ("parents have a constitutionally protected liberty interest in rearing their children without government interference"); *Morton v. Tipton*, 569 S.W.3d 388, 394 (Ky. 2019) (citing *Troxel*, 530 U.S. at 68, 120 S. Ct. 2054) ("the law presumes that a fit parent acts in the child's best interest"). The parents' exercise of joint custody rights when identified

solely by KRS 405.020(1) does not require judicial sanction, nor is unsolicited judicial interposition necessary or appropriate to resolve disagreements of the joint custodians. "[S]o long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Morton*, 569 S.W.3d at 397 (quoting *Troxel*, 530 U.S. at 68-69, 120 S. Ct. 2054).

However, when Joleen initiated divorce proceedings, she invited government participation. To prevent such government participation from becoming unconstitutional government interference, the legislature imposed constitutionally tailored limits on the courts' power and authority by enacting various provisions of KRS Chapter 403. The applicable statute here, KRS 403.270(2), authorizes a family court to assess the propriety of continuing joint custody as recognized by KRS 405.020(1).

Additionally, government participation through KRS 403.270(2) provides the means to resolve post-petition impasses in the joint custodians' decision-making going forward. That is to say, a family court properly exercising its jurisdiction has the inherent ability to "break the tie" when joint custodians cannot agree. *See Young v. Holmes*, 295 S.W.3d 144, 147 (Ky. App. 2009) ("joint custodians['] . . . failure to agree ultimately resulted in their abdication of such a

decision to the trial court" (quoted in *Lewis v. Lewis*, No. 2015-CA-001243-ME, 2016 WL 1273433, at *7 (Ky. App. Apr. 1, 2016)). Furthermore, once the courts are involved, "equal decision-making power is not required for joint custody, and parties or trial courts are free to vest greater authority in one parent even under a joint custody arrangement." *Fenwick v. Fenwick*, 114 S.W.3d 767, 776 (Ky. 2003), *superseded by statute on other grounds as stated in Fowler v. Sowers*, 151 S.W.3d 357, 359 (Ky. App. 2004), *overruled on other grounds by Frances*, 266 S.W.3d at 756-57, *and Pennington*, 266 S.W.3d at 768.

However, this Court knows of no authority, and Joleen cites none, requiring or allowing a family court to rule on the propriety of a joint custodian's relocation decision made before invocation of the court's jurisdiction. An *ex post facto*, post-petition judicial determination rejecting the legal presumption that a joint custodian's pre-petition relocation decision is in a child's best interest would be problematic and, quite arguably, could constitute unconstitutional governmental interference. We have even greater confidence that such a judicial determination would unconstitutionally interfere with parental rights when a pre-petition relocation decision is jointly made by joint custodians. *See Morton*, 569 S.W.3d at 397.

That is not to say, however, that the pre-petition conduct of joint custodians should not be considered by the family court when making a custody

-8-

decision pursuant to KRS 403.270(2). As noted, in this case the family court heard conflicting testimony regarding whether relocation was a joint or unilateral decision. Although Joleen is correct that the family court made no finding of fact regarding whether pre-petition relocation was in Child's best interest, we conclude such a finding was neither necessary nor appropriate. And yet the family court did certainly discuss in its analysis the effect of relocation, as well as the effect of Joleen's decision to remain in Kentucky.

As it considered the list of factors, and specifically those listed in KRS 403.270(2)(c) and (2)(e),[4] the family court analyzed the relationships Child has developed with family members in Kansas City, as well as those with other family members in Kentucky. It found Child has a close relationship with Andre's mother, father, sister, brother-in-law, and two nephews, who all reside in Kansas City. Likewise, the court found Child's relationships with Joleen and her family members who reside in Kentucky were good ones. We conclude the family court properly refrained from conducting a retrospective best-interest analysis by

---

[4] KRS 403.270(2)(c) and (2)(e) identify the factors as follows:

(c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;

. . .

(e) The child's adjustment and continuing proximity to his or her home, school, and community[.]

considering whether, on balance, the new and developing bonds of Kansas family members outweighed the dilution of existing Kentucky familial relationships, or vice versa. Such a hindsight-ruling might have prejudiced the objectivity of the analysis one way or the other.

Joleen next asserts the family court abused its discretion when it considered two separate incidents that occurred while Child was in Joleen's care. First, Joleen testified that during a visitation with Child, she brought the then-three-year-old to a Kansas City amusement park called Paradise Point. Because Child was not tall enough to ride the bumper cars, Joleen left him at a table, unattended, while she rode the bumper cars with her brother. Joleen testified that Child was within her eyesight the entire time.

The second incident concerned a Valentine's Day Facebook post. Specifically, she uploaded a picture of Child, with very little clothing, lying on a bed, holding a rose. She testified that she "takes the same pose of the child each year on Valentine's Day and will continue to do so until he is eighteen years old."[5] (Decree, p. 9.) Joleen removed the photograph after Andre raised concerns.

Joleen asserts the court should have disregarded these isolated incidents, because no harm was shown, which left the court to merely speculate as

_____

[5] The family court declined to speculate at what age Child's cooperation with the annual photo shoot would end.

to potential harm that could have occurred. We disagree. The family court found these two incidents "exhibited poor decision making regarding the child." As noted above, KRS 403.270(2) does not provide an exhaustive list of factors to consider. Evidence of a parent's decision-making skills certainly impacts the best-interest analysis. We find no abuse of discretion in the court's consideration of these incidents.

Joleen next contends the family court erred when it construed her testimony that "she would like the child at least 180 days a year" as a request for joint custody with equal timesharing. We agree with Joleen that this was not her expressed intention. Her petition sought joint custody but with a designation of Joleen as primary residential parent. Although Joleen did state she would like to have Child at least 180 days a year, this only came after her testimony that she wants Child 365 days a year.

The family court concluded that joint custody with equal timesharing was not feasible, based on the distance between the parties. Regardless of the family court's interpretation of her request, it found naming Andre the primary residential parent to be in Child's best interest. This conclusion was supported by substantial evidence. Therefore, any error in the family court's understanding as to Joleen's desire to be named primary residential parent is harmless.

Next, Joleen argues it was error for the family court to conclude "the minor child should sleep in his own, separate bed throughout the night when in [Joleen's] or any other person's home." We agree with Joleen.

"[M]inor day-to-day decisions concerning the child will, as a matter of necessity, be made by the parent with whom the child is residing at the time." *Fenwick*, 114 S.W.3d at 778. The decision as to where Child sleeps at night is a minor decision. The family court must not interfere with minor decisions, absent a finding, after a hearing, that the decision made by the joint custodial parent where the child is residing at the time will endanger the child's physical health or significantly impair the child's emotional development. KRS 403.330(1).[6]

The family court's determination regarding where Child is to sleep is an abuse of discretion because, at the time of the hearing, it was not supported by substantial evidence that allowing Child to sleep with Joleen would endanger his physical health or significantly impair his emotional development. Joleen remains entitled to decide where Child sleeps when, as a joint custodian, she is exercising her timesharing.

---

[6] KRS 403.330(1) states:

> Except as otherwise agreed by the parties in writing at the time of the custody decree, the custodian may determine the child's upbringing, including his education, health care, and religious training, unless the court after hearing, finds, upon motion by the noncustodial parent, that in the absence of a specific limitation of the custodian's authority, the child's physical health would be endangered or his emotional development significantly impaired.

We conclude Joleen's remaining claims of error to the family court's designation of Andre as primary residential parent are without merit.

*Child Support:*

Joleen does not challenge the calculation of child support. Instead, she asks only that this Court vacate and remand the issue of child support *if* we reverse the custody determination. Because we find no error in the family court's designation of Andre as the primary residential parent, we need not address this issue further than to affirm the family court's order requiring Joleen to pay $778.97 per month in child support.

*2015 Federal Income Tax Refund:*

In April 2016, the parties filed a joint 2015 federal tax return with the IRS. Both parties testified that Joleen received the refund, in the amount of $6,625.00, after the parties had separated. It is further uncontested that Joleen kept the entirety of the refund. The family court classified the refund as marital property and ordered Joleen to reimburse Andre approximately half, or $3,300.00.

Joleen contends the family court abused its discretion by treating the tax return as a marital asset, because it no longer existed at the time of trial. She claims to have used the money for marital obligations, *i.e.*, rent, electricity, water, car repairs, and caring for the minor child.

Whether the funds had been exhausted prior to the time of trial is irrelevant. What is important is that it was based on their 2015 incomes and filed with the IRS prior to their separation. Therefore, it is marital property, which must be divided equitably between the parties. *Smith v. Smith*, 235 S.W.3d 1, 5 (Ky. App. 2006).

If the family court had found Joleen spent the refund on marital obligations, Andre would not be entitled to half. However, Joleen has not presented any evidence, other than her own testimony, to establish it was spent on marital obligations. To the contrary, Joleen presented conflicting testimony about its use. At one point, Joleen testified she used the refund to pay her rent and bills after Andre left. However, at another time, she testified she used part of it to purchase a business named "Shorty G's." Joleen presented no definitive evidence establishing how she spent the 2015 income tax refund. And, we cannot say the family court's finding lacks substantial evidence that the refund was marital property Joleen spent on non-marital assets or obligations. Therefore, we affirm the award of $3,300.00 to Andre.

***US Bank Credit Card:***

During the marriage, the parties incurred a debt of $2,500.00 from a cash advance taken out on Andre's US Bank credit card. The money was given to Joleen's brother as a loan to buy an engagement ring. Andre testified he has made

all the payments toward this debt since the parties separated and, at the time of trial, a balance of $427.93 remained on the card. Joleen did not contest these facts.

Joleen did, however, testify that her brother repaid the debt prior to the separation. The family court found the US Bank credit card debt to be a marital debt and ordered Joleen to reimburse Andre $1,250.00.

The division of marital debt is within the discretion of the family court and the reviewing court will not disturb its ruling absent an abuse of discretion. *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 523 (Ky. 2001), *overruled on other grounds by Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018). Additionally, there is no presumption that debts incurred during the marriage are marital. *Id.* Joleen first asserts this is not a marital debt because the cash advance of $2,500.00 was not taken out for marital purposes.

In considering whether a debt is marital, courts look at factors such as receipt of benefits, extent of participation, whether the debt was incurred to purchase marital property, whether the debt was necessary to provide for the maintenance and support of the family, and economic circumstances related to the parties' ability to assume indebtedness. *Id.* Unlike *Neidlinger*, and the typical cases in which this issue arises, Andre did not incur this debt behind Joleen's back. To the contrary, the parties accrued this debt to benefit Joleen's immediate family member. She had knowledge prior to the cash advance and does not dispute her

agreement to loan her brother the money.  Therefore, she actively participated in incurring the debt.  Additionally, because the loan was for Joleen's brother, there was no non-marital benefit to Andre.  We cannot conclude that the family court's decision on this point is error.  As a marital debt, it was subject to equitable division by the family court.  We cannot find the division to be inequitable.

Additionally, Joleen contends, even if it was a marital debt owed on Andre's credit card, her brother repaid the debt to Andre.  But Andre specifically testified the money repaid on the revolving line of credit was used to satisfy the marital obligation.  Joleen presents no evidence that Andre used the funds for non-marital purposes.  We find no abuse of discretion by the family court assessing the evidence and making the award as it did.

## CONCLUSION

Based on the foregoing, we affirm in part and reverse in part.  We note that nothing in this Opinion reflects the family court abused its discretion in designating Andre as the primary residential parent.  We remand to the Warren Family Court for the entry of an order consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

BRIEF FOR APPELLEE:

Kenneth A. Meredith, II
Bowling Green, Kentucky

Joy D. Denton
Bowling Green, Kentucky