RENDERED: JULY 28, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0894-MR

CHARLES E. HALL                                                     APPELLANT

v.

APPEAL FROM LETCHER CIRCUIT COURT
HONORABLE JAMES W. CRAFT, II, JUDGE
ACTION NO. 18-CI-00293

BRANDEE CAUDILL                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; EASTON AND KAREM, JUDGES.

THOMPSON, CHIEF JUDGE: Charles E. Hall appeals from a decree of dissolution of marriage. The issues on appeal concern the division of marital property and child support. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

The parties in this case were married in 2001. They separated in November of 2018, were divorced in April of 2019, and the judgment awarding marital property was entered on May 9, 2022. Relevant to this Opinion is the fact

that, during the marriage, Brandee Caudill possessed an inheritance she received from her grandfather's estate. All parties agree that this inheritance is nonmarital. The main issues in this case revolve around the trial court's award to Appellee of her nonmarital interest in marital property. This nonmarital interest stemmed from her using money from her inheritance to purchase property during the marriage.

The trial court found that Appellee had spent $27,500 from her inheritance for the parties' first marital residence. This amount consisted of a down payment and closing costs for the property. The court also found that Appellee spent $2,000 from her inheritance for closing costs when the parties refinanced their mortgage on the marital residence. Later, the parties purchased a second marital residence prior to the completed sale of the first marital residence. The court found that Appellee had spent $50,000 from her inheritance as a down payment and $2,000 from her inheritance for closing costs. In total, the court found that Appellee had spent $81,500 from her inheritance and this amount had not been reimbursed to her during the course of the marriage. The court also found that Appellee had spent $20,000 from her inheritance on furniture to furnish the two marital homes over the course of the marriage.

Based on Appellee's expenditure of nonmarital funds, the trial court awarded her all the real property the parties owned and awarded her all of the

furniture.[1] The court held that this allowed her to recoup the amounts of nonmarital funds she expended during the marriage.

The trial court also found that Appellant was $18,000 in arrears for child support. To remedy this arrearage, the trial court awarded to Appellee a vehicle purchased during the marriage which was used by Appellant and titled in Appellant's name. The court valued the vehicle at $20,000.

## ANALYSIS

On appeal, Appellant argues that the trial court erred in finding that Appellee expended $81,500 of nonmarital funds for the real property purchased during the marriage. Appellant also argues that the trial court erred in finding that Appellee expended $20,000 of nonmarital funds to purchase furniture. Finally, Appellant argues that the trial court erred in awarding Appellee the vehicle to satisfy the child support arrearage.

"The legal standards applicable to our review of the family court's judgment are that findings of fact are reviewed only to determine if they are clearly erroneous." *Kleet v. Kleet*, 264 S.W.3d 610, 613 (Ky. App. 2007) (citations omitted). "Decisions of the family court concerning the division of marital

---

[1] Appellee was also required to be solely responsible for any outstanding mortgages and debts related to the real property.

property are within the discretion of that court, and we will not disturb those decisions except for an abuse of that discretion." *Id.* (citations omitted).

> [A] trial court's division of the parties' property requires a three-step process: (1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably divides the marital property between the parties.

*Travis v. Travis*, 59 S.W.3d 904, 908-09 (Ky. 2001) (footnotes omitted).

> Property acquired during the marriage and before a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership[.] [Kentucky Revised Statutes (KRS)] 403.190(3). When property consists of both marital and nonmarital elements, the trial court must determine the parties' marital and nonmarital interests. Kentucky uses the "source of funds" rule to characterize property or to determine the parties' nonmarital and marital interests. The source of funds rule simply means that the character of the property, i.e., whether it is marital, nonmarital, or both, is determined by the source of the funds used to acquire property.

*Kleet*, 264 S.W.3d at 614 (internal quotation marks and citations omitted).

> KRS 403.190(2)(b) requires a court to assign each spouse all of his or her nonmarital property, including [p]roperty acquired in exchange for property acquired before the marriage[.] When nonmarital property is not in existence at the time of dissolution, the party claiming a nonmarital interest in a presently owned asset must "trace" the previously owned asset into an existing asset. Tracing is [t]he process of tracking property's ownership or characteristics from the time of its origin to the present.

The Kentucky Supreme Court has recognized that tracing to a mathematical certainty is not always possible, [and] [w]hile such precise requirements for nonmarital asset-tracing may be appropriate for skilled business persons who maintain comprehensive records of their financial affairs, such may not be appropriate for persons of lesser business skill or persons who are imprecise in their record-keeping abilities.

*Id.* (internal quotation marks and citations omitted). "A trial court's ruling regarding the classification of marital property is reviewed *de novo* as the resolution of such issues is a matter of law." *Young v. Young*, 314 S.W.3d 306, 308 (Ky. App. 2010).

Appellant's first argument on appeal is that the trial court erred in its categorization of marital and nonmarital property. Specifically, Appellant argues that the trial court did not correctly apply the "source of funds" rule. Appellant argues that Appellee provided insufficient proof to show she used nonmarital funds in purchasing the two pieces of real property. In addition, he argues that there was no evidence regarding the amount of nonmarital funds used to purchase the two properties. We disagree.

In *Smith v. Smith*, 503 S.W.3d 178 (Ky. App. 2016), Amy Smith testified that she used a $26,000 certificate of deposit for a down payment on a marital home. The CD was a gift to her from her grandmother. That home was later sold and the proceeds used to buy another home. Ms. Smith's mother corroborated Ms. Smith's testimony. Mark Smith, Amy's husband, testified that

the CD was used for a down payment, but argued that since no documents were provided proving the existence of the CD, her nonmarital claim should fail. Another panel of this Court disagreed with Mr. Smith and held that the testimony of Ms. Smith, Mr. Smith, and Ms. Smith's mother was sufficient to show the existence of the nonmarital asset and trace it to the current marital home. *Id.* at 183-84.

This case is similar to *Smith*. Here, Appellee testified that she used money from her inheritance for down payments on the two marital homes; however, she also testified that she did not know how much she spent. Appellee's father also testified. He was a banker and the parties utilized him to keep track of and manage their finances. He testified as to the amounts of down payments and closing costs. Appellant also testified that Appellee used her inheritance for the down payments and agreed with the amounts set forth by Appellee's father. He claims, however, that Appellee was reimbursed those amounts after the sale of the first home was completed. We note that, although Appellant believed Appellee was reimbursed the two down payments after the sale of the first marital home, he did not know for sure if it happened and saw no evidence that it did indeed occur. Appellant further testified that the closing costs were not paid from the inheritance, but from joint, marital funds.

We believe there was substantial evidence to show that Appellee expended $81,500 of nonmarital funds during the marriage. Appellant, Appellee, and Appellee's father all testified that Appellee spent these funds. This is sufficient evidence according to *Smith*. In addition, while Appellant testified that Appellee was reimbursed these funds and that the closing costs were provided from joint funds, Appellee and her father testified to the contrary. Appellant's testimony is not sufficient to reverse the conclusion of the trial court

> Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, "[m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal," and appellate courts should not disturb trial court findings that are supported by substantial evidence.

*Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (footnotes and citations omitted).

This conclusion also holds true for the furniture issue. Appellee testified that the parties had originally bought the furniture on credit, but because the payments were high, she decided to pay off the debt by using money from her inheritance. Appellee's father testified that she used $20,000 from her inheritance to pay off the furniture debt. Appellant testified that Appellee's inheritance was not used to purchase the furniture, but that they purchased it over time using joint

funds and credit.  We believe there was substantial evidence to support the trial court's decision to award Appellee the furniture as a nonmarital asset.  While there is conflicting evidence, the trial court was in the best position to judge the credibility of the witnesses and weigh the evidence.  *Id.*

Appellant also argues that the trial court did not divide the property in just proportions.  KRS 403.190(1) states:

> In a proceeding for dissolution of the marriage or for legal separation, . . . the court shall assign each spouse's property to him.  It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:
>
> (a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;
>
> (b) Value of the property set apart to each spouse;
>
> (c) Duration of the marriage; and
>
> (d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

Appellant argues that the marital property was not divided in just proportions because Appellee was awarded all real property, all household furnishings, and a vehicle, but he only received a Honda side-by-side and a trailer used to haul it.  We believe there was no error.  As stated previously, the trial court

awarded all the real property and household furnishings to Appellee as nonmarital property. We have concluded that this was appropriate. We should also note that the trial court found that the parties equally split the funds in their bank accounts and this finding was not appealed. Once the nonmarital assets are set aside, we believe the remaining marital assets, the vehicle and the side-by-side and trailer, were justly apportioned.

Appellant's final argument on appeal is that the trial court erred in awarding Appellee the vehicle to satisfy a child support arrearage. We find no error. Appellee testified that Appellant had made no child support payments even though he was ordered to pay $500 a month. Appellant provided no testimony or other evidence regarding child support payments. The trial court held that there was a child support arrearage of $18,000 and ordered that Appellee be awarded a marital vehicle to satisfy that debt. This was appropriate.

## CONCLUSION

Based on the foregoing, we affirm the judgment on appeal.


ALL CONCUR.


BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

Ryan D. Mosley                          Gene Smallwood, Jr.
Hazard, Kentucky                        Whitesburg, Kentucky